**In the United States Bankruptcy Court**
**For the District of Delaware**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 07-10562 (BLS) |
| | ) | |
| PAC-WEST TELECOMM, INC., ET AL., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related to Docket Nos.** |
| | ) | **212, 254 & 281** |

### MEMORANDUM OPINION[1]

Before the Court is the motion (the "Motion") of Carlyle One Wilshire II, L.P. (the "Landlord"), to compel the payment of certain obligations pursuant to section 365(d)(3) of the Bankruptcy Code. The Debtors oppose the Motion. For the reasons stated below, the Court will deny the Motion in part and grant the Motion in part.

### BACKGROUND

On April 30, 2007 (the "Petition Date"), the Debtors filed this case seeking protection under Chapter 11 of the Code. As of the Petition Date, one of the Debtors, Pac-West Telecomm, Inc. ("Pac-West"), had leased from the Landlord a number of suites and wiring conduits at One Wilshire Boulevard, Los Angeles, California (the "Premises"), through two identical, unexpired leases (the "Leases"). See Leases, Exs. A and B [Docket No.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

212]. It is Pac-West's failure to pay certain sums due under the Leases that gives rise to the present dispute.

I.   The Recpature Amount

Section 9.2 of the Leases provides the Landlord with two ways to recover from Pac-West for Pac-West's use of electricity on the Premises.  First, the Landlord may estimate and include in Pac-West's monthly rent any amount that it reasonably determines to be necessary to reimburse itself for Pac-West's use of utilities, including electricity, subject to a true-up mechanism set forth in Section 4.2 of the Leases.  See Leases art. 9 § 9.2. Second, the Landlord may elect to "separately meter . . . the electrical usage of some or all of [Pac-West's] equipment, facilities or Premises." Id.  If the Landlord elects to separately meter any of Pac-West's electrical usage, then Pac-West is obligated to "pay the charges for all such separately metered electrical usage within 10 days after receipt of a billing therefor." Id.  The true-up mechanism contained in Section 4.2 does not apply to separately metered electricity charges.  The Landlord, in this case, made the election to separately meter Pac-West for electrical usage.

In order to effectuate its election to separately meter Pac-West, the Landlord sub-metered Pac-West from the sixteenth day of each month through the fifteenth day of the next month. Upon completion of this cycle, the Landlord generated a bill and

2

submitted it to Pac-West on the first business day of the following month.  The terms of the Leases then obligated Pac-West to pay within ten days after receiving the bill.[2]  While simple, this practice did not always lead to Pac-West receiving accurate electricity bills from the Landlord.

The sub-meter system evidently malfunctioned and did not include peak period consumption on the billing detail over an eighteen-month period stretching from November 16, 2005 through March 15, 2007.  The mechanical malfunction resulted in a billing deficiency for that period in the amount of $59,399.67 (the "Recapture Amount").  In light of this, the Landlord submitted a bill to Pac-West for the Recapture Amount on June 1, 2007, along with supporting documentation.  Pac-West has yet to pay the Recapture Amount.

## II.    The Late Charges

In addition to May 1 Electricity Bill, June 1 Electricity Bill, and the Recapture Amount, Pac-West owed two other sums under the Leases as of the Motion's filing.  First, Pac-West owed the Landlord $6,131.18 of the rent billed May 1, 2007 (the "Unpaid May Rent").  Second, Pac-West owed the Landlord $9,631.18

---

[2]     The Landlord submitted a bill to Pac-West on May 1, 2007 (the "May 1 Electricity Bill"), for the sub-metered electricity charges that accrued from March 16, 2007, through April 15, 2007, in the amount of $43,877.87.  The Landlord also submitted a bill to Pac-West on June 1, 2007 (the "June 1 Electricity Bill), for the sub-metered electricity charges that accrued from April 16, 2007, through May 15, 2007, in the amount of $41,170.35.

in reconciliation charges billed on June 1, 2007 (the "Reconciliation Amount").[3] Pac-West had paid neither of these sums prior to the filing of the Motion despite the fact that both had become due.

The Leases allow for the imposition of a late charge should Pac-West fail to timely pay any amount it owes under the Leases. Specifically, Section 7 of the Leases provides that:

> [I]f any installment of rent is not received by Landlord by the third business day of the month, or if [Pac-West] fails to pay any other sum of money due hereunder, [Pac-West] shall pay to Landlord, as additional rent, the sum of ten percent [10%] of the overdue amount as a late charge.

Leases art. 7. Pursuant to Section 7, the Landlord claims that it is owed a total of $16,021.04 in late charges with respect to the May 1 Electricity Bill, the June 1 Electricity Bill, the Recapture Amount, the Reconciliation Amount, and the Unpaid May Rent.

III. The Motion and Objection

On June 15, 2007, the Landlord filed the Motion and on June 22, 2007, filed an amended version of the Motion. The Landlord seeks payment of the May 1 Electricity Bill, the June 1

---

[3] As Section 4.2 of the Leases allows, after the end of each calendar year, the Landlord reconciles the estimated operating expenses, which are paid on a current basis in monthly installments, with the year's actual operating expenses and to the extent the amounts differ, the estimated amounts payable on a monthly basis for the succeeding year are adjusted upward or downward as necessary. This reconciliation is typically completed between March and May each year. The Landlord completed the reconciliation for the 2006 calendar year in May 2007 and arrived at an amount of $9,631,18 which it billed to Pac-West on June 1, 2007.

Electricity Bill, the Unpaid May Rent, the Recapture Amount, the Reconciliation Amount, late charges associated with all of these sums, and attorneys' fees.  The Landlord argues that Pac-West's obligation to pay all of these amounts arose after the Petition Date but before rejection and the Court, therefore, should compel prompt payment pursuant to section 365(d)(3) of the Code.  The Debtors filed a Response to the Motion on July 2, 2007.

In the Response, the Debtors agreed to pay the May 1 Electricity Bill, June 1 Electricity Bill, Reconciliation Amount, and the Unpaid May Rent.  The parties have represented to the Court that these undisputed amounts have been paid.  See Docket No. 343.  The Debtors, however, argue that any obligation of Pac-West to pay the Recapture Amount arose before the Petition Date and that section 365(d)(3) does not therefore require the Recapture Amount's prompt payment. In addition, the Debtors argue that this Court should extend, for cause, Pac-West's time for performance under the Leases as allowed by section 365(d)(3) on a *nunc pro tunc* basis, thereby excusing Pac-West's otherwise untimely performance and eliminating any basis for assessing most of the late charges.  Thus, only the Recapture Amount, assorted late charges, and attorneys fees remain unpaid and in dispute.

This matter has been fully briefed and argued.  It is ripe for decision.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C § 157(b)(2)(A) and (B).

**DISCUSSION**

The Landlord, through its Motion, requests the Court to compel the payment of seven separate sums that remain in dispute: (1) the $59,399.67 Recapture Amount, (2) $5,939.97 in late charges with respect to the Recapture Amount, (3) $4,387.79 in late charges with respect to the May 1 Electricity Bill, (4) $4,117.04 in late charges with respect to the June 1 Electricity Bill, (5) $963.12 in late charges with respect to the Reconciliation Bill, (6) $613.12 in late charges with respect to the Unpaid May 1 Rent, and (7) attorneys' fees in an amount to be determined.  The Court will address each of these requests in turn below.

I.   Recapture Amount

The Landlord asks this Court to compel payment of the Recapture Amount, claiming that section 365(d)(3) of the Code requires it.  Citing the "billing date" approach adopted by the Third Circuit in <u>Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 268 F.3d 205 (3d Cir. 2001), the Landlord argues that Pac-West's obligation under

section 365(d)(3) to pay the Recapture Amount arose after the Petition Date because the bill for the Recapture Amount arrived after the Petition Date.  The Debtors respond that section 365(d)(3) does not apply here and, to the extent that any liability for the Recapture Amount exists, the Landlord possesses only an unsecured prepetition claim.  More specifically, the Debtors argue that any obligation to pay the Recapture Amount arose well before the Petition Date because the electricity bills for the months at issue should have arrived, and actually arrived, on dates before the Petition Date.  At bottom, the Debtors contend that the malfunction of the sub-meter billing system cannot serve as a basis for converting what is clearly a prepetition liability into an administrative obligation under section 365(d)(3), particularly in the absence of express language in the Leases addressing these circumstances.  The Court agrees.

Section 365(d)(3) provides, in pertinent part, that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease . . . , until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."  11 U.S.C. § 365(d)(3).  In simpler terms, the bankruptcy trustee must fulfill any obligation that arises under a non-residential lease after the filing of the bankruptcy petition but before

either assumption or rejection occurs.  The court in <u>Montgomery Ward</u> addressed the issue of "what Congress meant when it referred to 'obligations of the debtor arising under a lease after the order of relief.'"  <u>Montgomery Ward</u>, 268 F.3d at 208.  The <u>Montgomery Ward</u> analysis guides this Court today.

The purpose of section 365(d)(3) "is to require the trustee to perform the lease in accordance with its terms."  <u>Montgomery Ward</u>, 268 F.3d at 209.  To be consistent with that purpose, one must "look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'"  <u>Id.</u>  The Code does not define the terms "obligation" or "arises," but "the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform."  <u>Id.</u>  Simply put, the debtor should "perform 'all the obligations . . . at the time required in the lease.'"  <u>Id.</u> (quoting <u>In re Krystal Co.</u>, 194 B.R. 161, 164 (Bankr. E.D. Tenn. 1996)).  This Court must therefore examine the Leases to determine both what and when Pac-West was legally required to perform.

Looking to the terms of the Leases, Section 9.2 provides, in pertinent part:

> [Pac-West] shall pay monthly upon billing as
> additional rent under this Lease such sums as
> Landlord's building engineer may reasonably

8

> determine to be necessary in order to
> reimburse Landlord for the additional cost of
> utilities . . . Moreover, at Landlord's
> election, Landlord may separately meter at
> [Pac-West's] expense the electrical usage of
> some or all of Tenant's equipment, facilities
> or Premises.  In such event Tenant shall pay
> the charges for all such separately metered
> electrical usage within 10 days after receipt
> of the billing therefore.

Leases art. 9 § 9.2.  It is clear that the plain language of the Leases indicates the Landlord will bill utility charges on a monthly basis if those utilities are estimated and included in the rent.  It is, however, less clear as to whether the parties intended for the Landlord to bill separately metered electrical charges on a monthly basis or at the Landlord's discretion since the term "monthly" is omitted from the sentence describing the Landlord's election to bill separately.

After careful consideration, the Court finds that the parties intended Section 9.2 to require the Landlord to bill sub-metered electrical charges on a monthly basis. The Court bases this conclusion on two observations.  First, Pac-West would likely not have entered into a lease where it expected to be billed for substantial usage of electricity at the complete discretion of the Landlord.  Second, the Landlord did, in fact, bill the sub-metered electrical charges on a monthly basis for the period during which the Recapture Amount accrued.  Therefore, Pac-West's obligation to pay for each month's use of electricity

arose when Pac-West received an electricity bill from the Landlord for that month.

The fact that both the Landlord and Pac-West were mistaken as to the extent of Pac-West's obligation does not change the point in time at which the obligation arose and became due. Since all of the bills for the months in which the Recapture Amount accrued were supposed to arrive prior to the Petition Date under the terms of the Leases, the obligation to pay for those months arose prior to the Petition Date.  Furthermore, the Leases contain no explicit true-up provision for sub-metered electricity charges that would obligate Pac-West to timely pay for a deficit, such as the Recapture Amount, at any particular later point in time.

The Landlord urges that this case is indistinguishable from Montgomery Ward and its progeny.  The Court disagrees.  In Montgomery Ward, the Third Circuit held that the debtor was obligated to pay invoices, which included real estate taxes for pre-petition periods, as a postpetition expense where the debtor became obligated under the express terms of the lease to pay the landlord upon receiving the invoice and the invoice arrived at a time contemplated by the lease after the filing of the petition. Other courts have followed this approach. Accord In re Garden Ridge Corp., 323 B.R. 136 (Bankr. D. Del. 2005) (holding in part that non-residential real property rent due on the first day of the month was a prepetition obligation when the due date fell on

a Sunday and the petition date fell on the following Monday); In re Chi-Chi's, Inc., 305 B.R. 396 (Bankr. D. Del. 2004) (holding that the debtors were not required by section 365(d)(3) to pay stub period rent); In re Valley Media, Inc., 290 B.R. 73 (Bankr. D. Del. 2003) (holding that an obligation to pay property taxes arose postpetition where the tax bill for which the debtor was liable came due during the postpetition period under the terms of the lease).  In each of the foregoing cases, however, the liability arose, or the bill arrived, on a date contemplated in the lease.  In the present case, the bill arrived on a date much later than contemplated by the Leases.  It is this difference between what should have happened under the terms of the Leases and what actually happened as a result of the sub-meter billing system's malfunction that distinguishes this case from Montgomery Ward and its progeny.

Section 365(d)(3) protects landlords by shifting the burden of the debtor's indecision from the landlord to the debtor: a landlord can remain confident that obligations arising post-petition will be timely paid while the debtor is deciding whether to assume or reject the lease.  Valley Media, 290 B.R. at 75.  It does not, however, protect landlords from their own malfunctioning billing systems.  Likewise, section 365(d)(3) does not afford landlords a free pass to scour their files upon a tenant's bankruptcy filing and issue invoices for unpaid (or

incorrectly calculated) prepetition obligations, absent explicit language in the lease that permits a landlord to do so. For the foregoing reasons, this Court finds that any obligation Pac-West may have incurred to pay the Recapture Amount arose before the Petition Date and thus falls outside the scope of section 365(d)(3).

II. <u>The Late Charges with Respect to the Recapture Amount</u>

The Landlord seeks prompt payment of $5,939.97 in late charges with respect to the Recapture Amount. As described above, the Landlord is not entitled to the prompt payment of the Recapture Amount because Pac-West's obligation to pay this amount arose before the Petition Date. Since Pac-West was not obligated (or even permitted, absent prior Court approval) to timely pay the Recapture Amount, the Landlord is not entitled to recover late charges based on the Recapture Amount and the Court will disallow that request.

III. <u>The Other Late Charges</u>

The Landlord seeks the immediate payment of late charges totaling $10,081.07 relating to Pac-West's untimely payment of the May 1 Electricity Bill, the June 1 Electricity Bill, the Reconciliation Amount, and the Unpaid May Rent. The Debtors have acknowledged that each of the obligations underlying these late charges are post-petition obligations payable under section 365(d)(3). The only basis offered by the Debtors for not

imposing late charges is the 60-day extension available under section 365(d)(3) for a debtor to perform obligations arising within sixty days after the filing of the petition.  The relevant portion of section 365(d)(3) provides that "[t]he court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period." 11 U.S.C. § 365(d)(3).  Specifically, the Debtors argue that their review of the Leases and the Landlord's bills was delayed by unspecified circumstances and exigencies that arose during the first sixty days of the underlying bankruptcy case and that this delay resulted in the untimely payment of the  postpetition obligations at issue.  The Court finds this argument unavailing.

   The Debtors have cited neither a specific cause nor applicable legal precedent that would allow the Court to extend the Debtors' time for performance under the Leases.  The Debtors' argument seems to be that they were too busy dealing with their bankruptcy to deal with the bankruptcy issues that now come before the Court.  While the Court is sympathetic to the pressures faced by a Debtor's management and professionals in the early stages of a Chapter 11 case, simply being in bankruptcy cannot constitute "cause" under section 365(d)(3).  Finding otherwise would make the extension automatic rather than

13

discretionary. Accordingly, the Court grants the Landlord's request to compel payment of late charges totaling $10,081.07 in relation to the May 1 Electricity Bill, the June 1 Electricity Bill, the Unpaid May Rent, and the Reconciliation Amount.

VII. <u>Attorney Fees</u>

Finally, the Landlord seeks payment of attorneys' fees pursuant to Section 16.1 of the Leases. Section 16 of the Leases provides that "[i]f [Pac-West] or Landlord shall bring any action for any relief, . . . the losing party shall pay the successful party its costs of suit . . . ." Leases art. 16 § 16.1. Consistent with the Leases, the Court will consider the Landlord's request for attorneys' fees upon submission of detailed invoices. Such invoices shall be filed with the Court and served on interested parties within thirty days of the entry of the Order accompanying this Opinion, and any responses thereto shall be filed and served within fourteen days of such filing.

## **CONCLUSION**

For the foregoing reasons, the Court finds that any obligation of Pac-West to pay the Recapture Amount arose before the Petition Date. Accordingly, the Landlord is not entitled to either the payment of the Recapture Amount or the payment of a late charge based on the Recapture Amount pursuant to section 365(d)(3) of the Code. The Court does find, however, that the Landlord is entitled to the payment of late charges totaling

$10,081.07 based on Pac-West's untimely payment of obligations that arose after the Petition date and will consider the matter of attorneys' fees upon the submission of detailed invoices as described above.

    An appropriate order follows.

By the Court,

Dated: October 5, 2007

Brendan Linehan Shannon
United States Bankruptcy Judge